**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Nos.  13 C 1997** |
| **v.** | ) | **04 CR 495-1** |
| | ) | |
| **TROY MARTIN** | ) | **Judge Rebecca R. Pallmeyer** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Troy Martin ("Martin"), known to his subordinates within the Mafia Insane Vice Lords street gang as "King Troy," was convicted by a jury of a massive drug distribution conspiracy and sentenced to life in prison.  Martin now seeks post-judgment relief from his conviction and sentence. His original post-conviction petition [1] argued that he received ineffective assistance of counsel in that (1) his lawyer failed to discover and argue that the government committed "fraud" in connection with Title III evidence; (2) his lawyer failed to request a "multiple conspiracies" instruction; (3) his lawyer failed to conduct an adequate investigation, interview witnesses, or present a defense; (4) his lawyer failed to give him appropriate advice concerning the government's "30-year plea offer"; and (5) his lawyer discouraged him from testifying and advised the court that he chose not to take the stand.  In a more recent motion [16], Martin seeks to add a claim that his sentence violated the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  For the reasons explained here, none of Martin's arguments support the grant of post-conviction relief.

<u>**DISCUSSION**</u>

The court begins with Martin's argument based upon *Alleyne*, as that one may be disposed of readily.  The government argues that any sentencing challenge based upon *Alleyne* is untimely, as it is unrelated to the claims he raised in his initial, timely petition, and was asserted for the first time well after the one-year statutory time limit.  The government notes, further, that the sentencing concern addressed in *Alleyne* is not applicable in this case, where the jury itself made findings that supported a sentence up to life in prison.  In any event, any argument based upon *Alleyne* is not available retroactively on post-conviction review.  *See Simpson v. United States*, 721 F.3d 875,

876-77 (7th Cir. 2013). Martin's claim based upon *Alleyne* is dismissed.

All of Martin's remaining claims allege ineffective assistance of trial counsel. To establish such a claim, Martin must show that his attorney's performance "fell below objective standards for reasonably effective representation," and that his defense was prejudiced as a result. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). As explained briefly below, Martin's claims fail on one or both of those two prongs.

## I.      Title III Evidence

The court turns, first, to Martin's claim that trial counsel neglected to challenge the Title III evidence. That claim is flatly inconsistent with the record. To the contrary, at every turn, counsel aggressively challenged the government's failure to seal Title III recordings. That challenge was the subject of substantial pre-trial briefing and argument [626, 749, 882, 946, 971, 1051, 1111] and was the centerpiece of Martin's appeal. Defense counsel prevailed, in that the Seventh Circuit ordered a limited remand for further findings on the matter of the failure to seal, generating another round of briefing and further written ruling from this court [2359, 2364, 2371, 2374]. This court, and the Court of Appeals, ultimately concluded that the Title III evidence was properly admitted; but any suggestion that counsel neglected this issue cannot be taken seriously.

## II.     Instructions

Martin complains that counsel failed to ask for a "multiple conspiracies" instruction, but the instructions the court did give made clear that the government had charged a single overall conspiracy and that "[p]roof of separate or independent conspiracies [was] not sufficient" to sustain the government's burden of proof on that charge. (Trial Tr. vol. 19, at 3428:13-17.) And the court explained, with respect to co-defendant Eddie Bell ("Bell"), that evidence that Bell was a member of "some conspiracy" but not the one charged, was insufficient. (*Id.* at 3429:11-15.) Martin has not explained how the evidence supported a "multiple conspiracies" instruction in his own case, nor how the absence of such an instruction prejudiced him. The instructions were accurate statements

of the law and were based on the evidence. Martin's attorney was not ineffective for failing to request additional language.

## III.     Failure to Investigate

Martin's third ineffective assistance argument asserts that his attorney failed to investigate adequately or prepare a defense. Martin's original petition made no mention of any facts his lawyer could have uncovered and did not identify any witnesses who could have offered exculpatory information. That failure defeats the "ineffective assistance for failure to investigate" argument, as such an argument requires the petitioner to identify "'sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)).

In his reply memorandum, Martin suggests his lawyer could have called "other members of the Mafia Insane Vice Lords who could have testified that Mr. Martin actually forbids members of the Mafia Insanes to traffic in narcotics." (Pet'r's Rep. [15] at 8.) Again, Martin has not identified any persons who could have offered such testimony, nor has he explained why his lawyer could not have elicited such testimony (if it were true) from the cooperating witnesses who testified for the government. In any event, as the government observes, "[t]he notion that Martin had forbidden narcotics trafficking by Mafia Insanes would have been laughable in the face of the evidence otherwise." (Resp't's Resp. [19] at 3.) Martin was the central figure in what the Court of Appeals referred to as a "sprawling narcotics-distribution network on the west side of Chicago, that has been in existence since 1998." *United States v. Martin*, 618 F.3d 705, 709 (7th Cir. 2010). Martin was the self-proclaimed "King" of the street gang at the heart of this operation. In this context it is not surprising that he has not identified exculpatory evidence that his attorney neglected. The defense that counsel did present—that Martin was a gang leader, but not the leader of a narcotics conspiracy—was not persuasive to the jury, but it represented a reasonable strategic approach.

3

In evaluating a claim of ineffective assistance, the court defers to "any strategic decision the lawyer made that falls within the 'wide range of reasonable professional assistance,' even if that strategy was ultimately unsuccessful." *Shaw v. Wilson,* 721 F.3d 908, 914 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689). Nothing about counsel's performance reflected inadequate preparation or a lack of attention to available arguments.

## IV.     Right to Testify

Nor is the court moved by Martin's contention that his attorney acted improperly by discouraging him from testifying. Martin asserts that his attorney told him the prosecutor would "tear [him] up" if he were to take the stand. Assuming that counsel did warn that, were he to take the stand, Martin would be subject to a bruising cross-examination, such a warning was likely accurate. *See Taylor v. United States*, 287 F.3d 658, 662 (7th Cir. 2002) (discussing the risks of testifying, including impeachment with prior convictions). Martin's criminal history, inadmissible unless he took the stand, included convictions for violent crimes, include a murder.

Martin complains that it was his attorney who told the court that Martin would not testify, but this is simply not true. First, on October 2, 2006, the court explained to Martin and his co-defendants, "you are entitled to take the stand in your own defense, and you are entitled to do that regardless of what counsel or advice you are getting in that regard from your lawyers. Ultimately, the decision is yours to make and yours alone." (Trial Tr. vol. 17, at 3006:17-22.) The following day, the court reminded them: "You gentlemen have the absolute right to take the witness stand in your own defense if you choose to do so. I am not suggesting that you should ignore any advice that has been given to you by your lawyers. You should consider that advice carefully. But the final decision is yours and yours alone, and I want to make sure that you understand that." (Trial Tr. vol. 18, at 3184:10-15.) Then, when the court turned to Martin himself, he answered as follows:

THE COURT:                    Mr. Martin, have you chosen at this time that you will not

|                   |                                                |
|-------------------|------------------------------------------------|
|                   | testify?  Is that right?                       |
| DEFENDANT MARTIN: | Yes.                                           |
| THE COURT:        | And that's your decision, sir, is that right?  |
| DEFENDANT MARTIN: | Yes.                                           |

(*Id.* at 3207:25-3208:5.)  Martin was advised that he had the right to testify and that the decision was ultimately his alone to make.  His lawyer's alleged ineffective assistance could not have prejudiced him.

## V.    Plea Negotiations

That leaves the matter of alleged ineffective assistance in connection with plea negotiations. In support of this claim, Martin relies on the recent Supreme Court decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), but the Seventh Circuit, like several others, "recognized long ago the potential for ineffective assistance claims arising from uncommunicated plea offers."  *Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012) (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir.1986)); *see also Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir.2005) ("counsel's performance may fall below the minimum threshold if he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses").

Martin suggests that his attorney was ineffective in failing to advise him to accept the government's purported offer of a 30-year plea deal.  But the circumstances here are nearly identical to those recognized as insufficient to support post-conviction relief in *Gallo-Vasquez*, where, "aside from the allegation contained in Gallo-Vasquez's motion, there is no evidence that the government offered petitioner a deal. The motion does not attach a copy of the proposed agreement, state when or by whom the offer was made, or give any details other than to assert that it contemplated a [more favorable] sentence."   402 F.3d at 798.  Here, similarly, nothing in the record, apart from Martin's assertion, supports a finding that the government offered him a 30-year

plea deal. And assuming that such an offer was made at some point, Martin has not established that his attorney was *ineffective* in allegedly advising him to reject it. The only description Martin has offered of his attorney's advice is that "counsel persuaded Mr. Martin that it was to his advantage to proceed to trial instead of accepting the Government's plea offer; at least, this was Mr. Martin's understanding of counsel's attempt to explain the options . . . ." (Pet'r's Mem. [12] at 37-38.)

Martin cites *Titlow v. Burt*, but the petitioner in that case made a much more substantial showing of ineffective assistance. 680 F.3d 577 (6th Cir. 2012), *cert. granted*, 133 S. Ct. 1457 (Feb. 25, 2013) (No. 12-414). Reviewing the denial of a § 2254 petition, the *Titlow* court noted it was free to consider "affidavits submitted by the defendant during his state-court appeals as well as other statements made by the defendant throughout the proceedings." 680 F.3d at 589. The record before the Sixth Circuit included the affidavit of an attorney who had initially represented the petitioner and had recommended that she accept the plea offer. The court also took note of the fact that petitioner actually did at one point accept the plea deal, only to proceed to trial on the advice of substitute counsel who had not reviewed the evidence against her. Over a dissent, the Sixth Circuit directed the state prosecutor to re-offer the plea deal.

The record in support of petitioner Titlow's claim is substantially more detailed and specific than Martin's unexplained assertion that, though he maintains his innocence, he would have accepted a 30-year plea deal. Even so, as Martin notes, the Supreme Court has granted *certiorari* to review the question of "[w]hether a convicted defendant's subjective testimony that he would have accepted a plea but for ineffective assistance, is, standing alone, sufficient to demonstrate a reasonable probability that defendant would have accepted the plea." Petition for Writ of Certiorari at i, *Burt v. Titlow*, 113 S. Ct. 1457 (Oct. 2, 2012) (No. 12-414). Martin has not presented evidence that his attorney was ineffective with respect to plea negotiations.

## **CONCLUSION**

Martin's sentencing challenge based on *Alleyne* appears to lack merit and is not cognizable on post-conviction review. His allegations of ineffective assistance of counsel fail because he has not shown that his attorney's performance fell below reasonable standards or that his attorney's performance prejudiced his defense. The petition is denied and this case is dismissed. The court will, however, grant a certificate of appealability solely for review of the question of whether petitioner's conclusory assertion that he would have accepted a plea agreement, standing alone, is sufficient to trigger the need for an evidentiary hearing on the issue.

ENTER:

Dated: October 31, 2013

REBECCA R. PALLMEYER
United States District Judge